**Electronically Filed
Supreme Court
SCWC-16-0000712
30-JAN-2020
09:19 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

GRACE CHEN,
Respondent/Plaintiff-Appellee,

vs.

JONATHAN WILLIAM MAH, D.D.S.;
JONATHAN MAH, DDS, INC., a Hawaii corporation,
Petitioners/Defendants-Appellants.

_____

SCWC-16-0000712

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000712; CIV. NO. 12-1-2495-10)

JANUARY 30, 2020

McKENNA, POLLACK, AND WILSON, JJ., WITH RECKTENWALD, C.J.,
CONCURRING AND DISSENTING IN PART AND CONCURRING IN THE
JUDGMENT, WITH WHOM NAKAYAMA, J., JOINS

OPINION OF THE COURT BY McKENNA, J.

## I. Introduction

This case concerns a compensation dispute based on an oral

agreement between an independent contractor dentist, Dr. Grace

Chen ("Chen"), and the dentist who retained her services, Dr.

Jonathan Mah ("Mah"), and his corporation, Jonathan Mah, DDS,

Inc. ("Corporation") (collectively, "Defendants").  In sum, default and subsequent default judgment as to certain claims were entered against Defendants, and a bench trial was held regarding damages on some remaining claims.  Defendants unsuccessfully appealed the Circuit Court of the First Circuit's ("circuit court")[1] denial of their motion to set aside entry of default, and their motion for reconsideration and/or for new trial to the Intermediate Court of Appeals ("ICA").  See Chen v. Mah, CAAP-16-0000712 (App. Mar. 14, 2019) (SDO).

We hold the circuit court did not abuse its discretion in denying Defendants' Hawai'i Rules of Civil Procedure ("HRCP") Rule 55(c) motion to set aside entry of default on the grounds they failed to satisfy the second and third prongs of the test governing HRCP Rule 60(b) motions to set aside default judgments.  The three prongs are: (1) the nondefaulting party will not be prejudiced by the reopening, (2) the defaulting party has a meritorious defense, and (3) the default was not the result of inexcusable neglect or a wilful act.  Although HRCP Rule 55(c), by its plain language, only requires a showing of "good cause" to set aside an entry of default, binding precedent required the circuit court to apply the HRCP Rule 60(b) standard to Defendants' motion.  The circuit court also did not err in its other rulings.

---

[1]     The Honorable Gary W.B. Chang presided.

2

Requiring a movant under HRCP Rule 55(c) to satisfy HRCP Rule 60(b) requirements, however, contradicts the plain language of the former rule, which only requires "good cause." Thus, we therefore now hold that HRCP Rule 55(c) motions are governed only by the "good cause" standard explicitly stated in the rule, and that movants seeking to set aside an entry of default pursuant to HRCP Rule 55(c) need not satisfy the three-prong test applicable to HRCP Rule 60(b) motions to set aside default judgments. Our holding is prospective only, however, as trial courts were required to follow precedent requiring parties seeking to set aside an entry of default pursuant to HRCP Rule 55(c) to satisfy the three-prong test for HRCP Rule 60(b) motions. Therefore, by announcing this "new rule," we must avoid unfair prejudice to parties and trial courts that have relied on binding precedent, and our holding applies only to decisions on motions to set aside entries of default after the date of this opinion. See Kahale v. City and Cty. of Honolulu, 104 Hawaiʻi 341, 348, 90 P.3d 233, 240 (2004).

Accordingly, we affirm the May 3, 2019 judgment on appeal entered by the ICA pursuant to its March 14, 2019 summary disposition order ("SDO"), which affirmed the circuit court's July 6, 2016 final judgment.

## II.  Background

### A.  Procedural and factual background through the July 13, 2013 hearing on Defendants' motion to set aside entry of default

On October 3, 2012, Chen filed a twenty-four page complaint against Defendants in circuit court, which included forty-two detailed preliminary factual allegations.  In summary, Chen alleged she and Defendants entered into an oral compensation agreement in November 2008 under which the Corporation agreed to retain her professional services as an independent contractor associate dentist and to compensate her for treating dental patients at its principal place of business according to a formula under which she was entitled to be regularly paid 40% of the gross income produced to the Corporation for her dental work on patients adjusted or reduced by (1) 40% of the gross income not actually collected from her patients or their insurance carriers and (2) 50% of the lab fees incurred by her patients for her treatment of them.

According to the complaint, the Corporation commenced paying Chen a couple of months after she started working in late 2008 based on its collection of income produced from her work, adjusted as reflected above, and regularly provided her with supporting documentation describing in detail all adjustments for uncollected income and patients' lab fees, and this practice continued until November 5, 2011.

4

The complaint further alleged that several months after beginning work, when Chen asked for a written compensation agreement or a partnership, and repeated this request several times, on each occasion, Mah represented he would have partnership documents prepared and provided to her, but this never happened.  Chen alleged that when Mah made these representations, he misled and lied to her as he had no intention of making her a partner as evidenced by him making similar representations to other dental associates and not making them partners, as she later learned.

Chen alleged she continued working based on Mah's representations that he would make her a partner, and in fact, accelerated and increased her work efforts and hours of work as an associate dentist to favorably impress Mah of her abilities and worthiness to be his partner.  The complaint alleges that, by July 2011, Chen had increased her work schedule to four days a week while working eight hours per day on weekends and twelve hours per day on Mondays and Tuesdays, and, as a result, Chen produced gross income for the Corporation exceeding $1 million for both calendar years 2010 and 2011, generating substantial income for Defendants consisting of the Corporation's 60% share of her gross income.  Chen alleged she relied upon and trusted Defendants to accurately calculate and timely pay her the

correct amounts of money owned to her under their compensation agreement.

According to the complaint, after November 5, 2011, Defendants suddenly, and without explanation, stopped providing any calculations and supporting documentation to Chen and her compensation payments became erratic and changed to rounded lump sums. Chen alleged that in 2012, Defendants failed to provide her with a 1099 miscellaneous income form for 2011 despite her repeated requests and failed to pay her any compensation since June 15, 2012. According to the complaint, the Corporation paid Chen $359,874.18 in 2011, and Defendants had underpaid her approximately $200,000 or more in income, but she was unable to determine the amount with certainty without the Corporation's accounting documents. Chen also alleged the Corporation had paid her $92,500 in 2012, but she had been underpaid at least $45,669.76 through her August 23, 2012 resignation by admission of Defendants' accountant Gloria Thompson in her unsupported September 14, 2012 two-page accounting compilation.

The complaint further alleged Mah and his wife had personal federal tax liens filed against them for 2005-2009 for hundreds of thousands of dollars in unpaid income tax, with tax liens still pending against them in 2011, and that upon information and belief, in October 2011, Mah used portions of the monies owed to her to pay these delinquent tax liens. Chen further

alleged she had made multiple efforts in 2011 and 2012 to meet and speak with Mah to obtain an accounting and explanation of the above, but Mah repeatedly evaded her or cancelled meetings at the last minute.  Chen also alleged she made repeated demands for accounting documents and for payment of the estimated unpaid amounts exceeding $200,000 owed to her, but Defendants failed or refused, raising excuses and attempting to charge exorbitant copying fees, and providing only Gloria Thompson's accounting compilation.

The complaint further alleged that by failing to timely pay her, Defendants had prevented Chen from timely filing her 2011 income taxes and making regular contributions to her own retirement plan, thereby causing her to incur a penalty in an amount to be determined.  Chen also alleged that two days after she was coincidentally seated next to Mah on a flight from Hilo to Honolulu on August 8, 2012 and complained to Mah about being owed substantial funds and not being provided accounting records, Mah announced to all associate doctors he was closing his office and hiring an independent CPA to review all doctors' compensation for 2012 in response to Chen's complaint, but despite that, Mah and at least one associate dentist continued to work out of his office, along with staff.  Chen also alleged that on August 10, 2012, the Corporation's office manager texted all associate doctors that they were welcome to have their own

CPAs review the data. Chen submitted a resignation letter on August 23, 2012, requesting accounting documents and sums owed by August 28, 2012.

Based on these detailed factual allegations, Chen's complaint asserted causes of action in twelve counts: declaratory judgment (Count I), accounting (Count II), breach of contract and of implied covenant of good faith and fair dealing (Count III), conversion (Count IV), fraud (Count V), intentional/negligent misrepresentation (Count VI), intentional infliction of emotional distress (Count VII), unjust enrichment (Count VIII), statutory fraudulent transfer (Count IX), common law fraudulent transfer (Count X), constructive trust/equitable lien (Count XI), and punitive damages (Count XII).

Before the complaint was filed on October 3, 2012, Chen's retained counsel, Dennis King ("King"), sent a demand letter dated September 10, 2012, to Defendants. The letter demanded Defendants immediately pay Chen the delinquent amounts owed to her in the amount of $237,268.92 for past due compensation owed to her, inclusive of attorney's fees of $4,750, and that Defendants deliver to King's office accounting and billing statements, daily production, worksheets, and lab fees for services performed by Chen for the period from January 1, 2011 to September 10, 2012. The demand letter stated: "If I do not receive the above payment and these records on or before 5 PM on

Saturday, September 15, 2012, I have been instructed to immediately file suit against you and your company to recover these amounts and any other amounts owed to Dr. Chen after obtaining your documents and performing a full accounting of your delinquent payments based on the claims, among others, described below."

Mah and King had several discussions and communications by e-mail and regular mail between September 11, 2012 and October 3, 2012.  During the discussions, King asked Mah if he had an attorney as King preferred to speak to Mah's attorney.  Mah indicated, however, he did not have an attorney but had spoken to a friend who was an attorney and did not want to incur the high expenses of an attorney.  Most of the discussions concerned attempts by Mah and King to informally resolve the matter, by Chen obtaining Mah's documents without pursuing litigation.

Specifically, on or about September 11, 2012, Mah called King in response to the demand letter.  Mah had informed King that he did not have an attorney representing him in this matter.  Also on September 11, 2012, Mah provided the two-page compilation report summary[2] purportedly of compensation paid and owed to Chen from 2008 through 2012, but it did not include any

---

[2]    An undated report was attached as "Exhibit C" to Defendants' memorandum in opposition to the entry of default judgment, but according to King, contained different figures than the one provided to King on September 11, 2012.

information identifying who authored the document, and no backup documentation was provided.  In an email dated September 12, 2012, King requested backup documentation and contact information for Mah's CPA.  King also noted that if Mah altered, changed, or destroyed relevant documents, Chen would have no choice but to assert the spoliation rule against him in any ensuing litigation if the matter could not be resolved before litigation, but that he "look[ed] forward to receiving . . . [Mah's] supporting documents and the CPA contact information . . . so that this matter can be resolved before 9/15/12."

On September 14, 2012, Mah indicated that because he did not have duplicates, and because Chen had allegedly previously removed accounting records without prior authorization in July 2012, Mah was not willing to allow the records to be removed from the dental office for photocopying, but he would permit King and Chen to inspect all accounting data at the dental office, which was consistent with what Mah allowed all associate doctors to do.  Mah indicated, however, any copies made would be done at the dental office by the office manager at one dollar per page.  King responded in an e-mail to Mah that he was not authorized to pay one dollar per page for 3,000 pages of documents, that he was only requesting documents for 2011 and 2012, and that he was willing to accept e-mailed or faxed copies of Mah's accountant's summary of monthly totals for collections

10

and non-collection adjustments and lab fees for each month from and after January 1, 2011 to the present for Chen's billings for her services.

Following this exchange, Mah called King on September 15, 17, 24, and 28, and October 2, and 3, 2012.[3]  Mah indicated he was in the process of attempting to comply and furnish relevant accounting data to King, and King asked Mah why it was taking so long.  Mah explained there were voluminous records from 2008 to 2012; King clarified he was only interested in 2012 despite Mah's explanation that reviewing only one year, 2012, would not generate an accurate result.  King then gave Mah a new deadline.

According to Mah, because of the ever-changing deadlines to comply with requests, together with King's assurances of resolving the matter without litigation, Mah felt he was misled and confused into believing there was still time to resolve this matter informally.  Further, according to Mah, because King made assurances during their telephone conversations that Mah and Chen would avoid litigation by attempting to resolve this matter informally, and because King was seemingly reasonable, cordial, and professional, Mah, in good faith, trusted King, and was under the impression that King was available to mediate and assist the parties in resolving this matter.  In addition, according to Mah, King never recommended to Mah to obtain the

_____

[3]     The logs indicate Mah did not contact King after October 3, 2012.

assistance or advice of another attorney, or stated that King had a duty of loyalty to Chen to act solely in her best interests at Mah's expense.

After their telephone conversation on October 3, 2012, King sent an e-mail to Mah that same day, summarizing the conversation, and stating that "[t]o date you still have not provided the accounting documents initially requested in November[] 2011 by Dr. Chen or by her on numerous occasions thereafter," that Mah's requirement that copies of documents cost one dollar per page was unaffordable and unreasonable, that "we are at an impasse with regard to you producing the accounting documents," and that "[r]egrettably because of your unwillingness to produce these documents willingly within a reasonable time and to pay [Chen] what she is owed, I have recommended that Dr. Chen pursue this matter through the courts. After you retain counsel, please have your attorney contact me." According to King, he did not mislead Mah in any way about trying to settle the case without litigation and Mah knew on their last conversation on October 3, 2012 that the matter was going to proceed to court based on King's recommendation and that the parties had reached an impasse.

The complaint was served on Defendants in Hilo, Hawai'i on October 8, 2012, by serving Mah in both his personal capacity as well as the registered agent for Corporation. Mah was also

served with discovery requests on that date.  On October 31, 2012, Chen promptly filed a request for entry of default on the complaint, and default was entered against Defendants by the circuit court clerk that same day.  Copies of the clerk's entry of default were served on Defendants by U.S. mail on November 2, 2012.

There was no further activity in the litigation until May 24, 2013, when Chen filed a motion for default judgment, and a hearing was set for July 9, 2013.  The motion requested damages from Defendants on the following counts only: Counts III (breach of contract), IV (conversion), V (fraud by concealment by retaining her compensation without accounting), VI (fraud by misrepresentation of intention to make Chen a partner), VIII (unjust enrichment), and XI (constructive trust/equitable lien).

On June 20, 2013, Defendants, through their attorney, filed a motion to set aside the October 31, 2012 entry of default ("motion to set aside entry of default"), which was set for a hearing on July 18, 2013.  Attached to the motion was a declaration by Mah, dated June 18, 2013, alleging, among other things, that Mah only "recently learned" that default against Defendants had been filed on October 31, 2012, that Mah never realized King "was adversely taking action against me while negotiating a resolution," and that Mah was misled by King in

his representations to try and settle the case without unnecessary litigation.

Defendants also filed an ex parte motion to shorten time for hearing their motion to set aside entry of default, asking that the hearing on their motion be set for before the July 9, 2013 hearing date for Chen's motion for default judgment. The circuit court denied this ex parte motion on the grounds that there was no showing why the motion to set aside entry of default was not filed earlier to obviate the need to shorten time.

At the July 9, 2013 hearing, however, the circuit court denied Chen's first motion for default judgment without prejudice.

On July 10, 2013, Chen filed a memorandum in opposition to Defendants' motion to set aside entry of default. Attached to the memorandum was a declaration by King dated July 10, 2013, which stated, among other things, that since October 3, 2012, King had not had any discussions or communications with Mah except through the service of court documents.

At the July 18, 2013 hearing on Defendants' motion to set aside entry of default, the circuit court clarified the standard it would apply:

> And the entry of default, setting aside requires the
> showing of essentially three things, one, there's no
> prejudice to the plaintiff, number two, that the defendant
> has a meritorious defense andm number three, that the

14

> default entered as a result of -- did not enter because of inexcusable neglect.

The circuit court then inquired for which of Chen's twelve counts Defendants had meritorious defenses.[4] Defense counsel argued Defendants had meritorious defenses for the fraud claims because this was not a fraud, but an accounting case.

The circuit court then inquired what the meritorious defense was for Chen's fraud claim in Count V (fraud by concealment by retaining her compensation without accounting). Defense counsel responded that, "[b]asically, the accounting reflects that [Defendants] overpaid Chen." According to defense counsel, Defendants had nothing to hide, were willing to do the accounting, and let the numbers resolve the case. Defense counsel went on to state that the classification of some of Chen's billings were being bounced back by the insurance companies and were not reimbursed because "they were not proper." According to defense counsel, Chen was expecting Defendants to front generic gross amounts without getting

---

[4] Defendants did not assert separate defenses as to each of the twelve counts in their motion to set aside entry of deafult. Rather, they asserted they "have a meritorious defense" as they "den[ied] any monies owed to Plaintiff" and "claim[ed] in good faith that Plaintiff was overpaid in compensation as documented in the accounting that has been made available to opposing counsel"; Defendants had offered for inspection and copying their accounting documents and retained an independent accountant to "provide a summary of the voluminous accounting data."

Defendants also alleged they were led to believe that if all of the information was turned over, Chen would not take action. Defendants asserted they would not have failed to file an answer had King not misled Defendants into believing legal action would not be taken if the accounting documents were provided.

compensation back, and the crux of the case was going to be accounting.

The circuit court probed further and asked if Mah ever told Chen that there was an overpayment requiring an adjustment, to which defense counsel responded in the affirmative, citing to Exhibit 9 in Chen's memorandum in opposition to Defendants' motion to set aside entry of default.[5]  That exhibit was a letter informing associates of the Corporation that compensation was switching from production-based to collections-based.  The

---

[5]     Exhibit 9 is a June 25, 2012 letter signed by Mah and addressed to the "associates" of the Corporation.  It stated:

> We are providing this letter to you for inclusion in your records regarding the method of disbursement of compensation checks.
>
> Prior to July 1, 2012, disbursement of compensation checks were based upon estimated production numbers.  This meant that the time between the claims being sent out and the actual funds that were collected (including necessary adjustments) could be between a few days for a simple procedure to 90 days or more for more complex procedures.
>
> The growth of the office has resulted in increased expenses, staffing costs, and many more transactions that are processed.  As a consequence of this, our accountant has strongly advised us to implement a change from production to a collection method of disbursing compensation checks.
>
> What this means is compensation checks will now be given out once the money has been collected from the insurance companies and patients accordingly.
>
> This change should make a much more streamlined process in the office, as well as reduce the number of man hours needed.
>
> Be assured that this will in no way mean less compensation, but rather change only when payments are disbursed.  This change will help keep office expenses steamlined [sic].

16

circuit court then asked the defense, "And where does he talk about an overpayment and then he's going to now make an adjustment?"  To that inquiry, the following exchange occurred with the circuit court:

> MR. KIDANI: In terms of the overpayment, that came up in the audit that was done by the accountant, Thompson.
>
> THE COURT:  When was that done?
>
> MR. KIDANI: That was done in 2012 when this whole issue came up, and this was the information that was being given to Mr. King directly from our client.  And that audit continued on an ongoing basis through 2012 into 2013.  And that was --
>
>     . . . .
>
> . . . part of the delay of the information that was -- that they were waiting for.
>
> THE COURT:  Where in Exhibit 9 . . . does Dr. Mah explain that there was an overpayment and now we have to make an adjustment, therefore, we're not going to pay you in the same fashion that we did before?
>
> MR. KIDANI: That wasn't in that letter.
>
>     . . . .
>
> . . . I think that was what was conveyed by him to all the associates.  It wasn't in this letter.
>
> THE COURT:  Okay, where in his declaration does he talk about the timing of when he told Dr. Chen that there was an overpayment and he is making an adjustment?
>
> MR. KIDANI: . . . [S]tarting with paragraph 14 of his declaration, he indicated in 2011 and '12 that he first started learning of the overpayment.  And it goes on into 15 -- 14, 15, 16.
>
> THE COURT:  Why don't you just point me to the paragraph and the language in Dr. Mah's declaration attached to your motion where he says he informed the plaintiff, Dr. Chen, that there was this overpayment so he's making an adjustment.
>
>     . . . .

> MR. KIDANI: Okay.  Paragraph 21[6] was when he informed all the doctors of the complaint and his investigation started and that Gloria Thompson was retained at that point to complete the investigation.  It was after Gloria Thompson finished that that information was given to Dr. Chen on the overpayment.

Defense counsel clarified that Gloria Thompson, the "independent CPA" hired by Defendants, finished her final report in April 2013 after she got all the 2012 numbers.  The circuit court noted, however, that the complaint had been filed in October 2012 and there had been no audit finished before the lawsuit was filed.

In response to defense arguments regarding the fraud claims, Chen's counsel argued Mah's letter was written generically that the reimbursement program would be changing, but it did not give notice that it was going to change retroactively.  Rather, Chen's counsel argued Chen had been strung along to continue working with the Corporation, and although she had repeatedly asked for her compensation and accounting, Mah would keep saying it was coming and therefore

---

6       Paragraph 21 of Mah's declaration states:

> On or about August 10, 2012, I sent a written message to all Associate Doctors.  My message was as follows: "Based upon a complaint made by Dr. Chen on August 8, concerning improper and inaccurate calculations of doctors [sic] compensation.  Dr. Mah has hired an independent CPA to review all doctors [sic] compensation for 2012.  Dr. Mah considers the doctors [sic] professional compensation a serious matter, and for that reason effective immediately, the office will be closed to all associate doctors until this matter is resolved.  All associate doctors are welcome to have their own CPA review the same data.  If you have any questions or concerns please contact Dr. Mah."

induced her to keep working, trusting that the accounting would eventually be produced. Chen's counsel also argued the second basis for the fraud claim was Mah's dangling the prospect of a partnership in front of her while she was being grossly underpaid.

Defense counsel replied that Mah's testimony would show that partnership was never offered to Chen. Further, according to defense counsel, even if that had occurred, it could not serve as a basis for fraud because there was no clear and convincing evidence suggesting Mah did anything intentional to deceive Chen. Additionally, as for the accounting, according to defense counsel, Chen had access to raw data and so it was not a situation in which Mah was trying to hide anything. According to defense counsel, Chen not liking the results of the audit did not constitute fraud.

Defense counsel also argued that once the accounting was finished, the numbers would not change that substantially, and would just show whether Chen was entitled to money or not.

Turning to "excusable neglect," defense counsel noted that prior to the filing of the complaint, Mah had been in discussion with King, and therefore both parties were attempting to resolve the case without litigation. Defense counsel argued that Mah, although a dentist, was like a layperson from the neighbor islands, who "hear[s] things a different way." Thus, although

King had stated to Mah in an October 3, 2012 e-mail that he recommended Chen pursue the matter through the courts, this did not mean there was an impasse.

After hearing the arguments,[7] the circuit court ruled Defendants did not meet their burden of proof because it was "unable to find the existence of a meritorious defense as to liability," and also "unable to find that the default entered as a result of any excusable neglect on the part of the defendants."  Specifically, the circuit court stated:

> The court concludes that the defendant did not meet the burden of proof under the Hawaiʻi case law, the BDM case.  The court agrees with the defendant that there really is no prejudice[8] within the meaning of the BDM case to the plaintiff if default is set aside.  However, with respect to meritorious defense as to liability, the court is unable to conclude that the record shows that the defendant has -- or the defendants have meritorious defenses as to liability.  The arguments really go to damages which they are not precluded from litigating even if they are in default.  The case law permits a defendant in default to continue to litigate the question of damages.
>
> As to excusable neglect, there really is an insufficient basis in the record to support a finding or conclusion that the defendants were excusably negligent in failing to respond to the complaint.  It really -- the record only shows that the defendant was avoiding his obligations under the law to respond to the complaint in a timely fashion.  Although the plaintiff[] did not give the defendants much latitude in terms of the 20 days to respond to the complaint, the plaintiff moved very quickly after the 20 days expired to obtain the entry of default.  So there was very little opportunity for negotiation on extensions of time or things of that nature, but <u>no overtures were made by the defense to the plaintiff to</u>

---

[7]    Defense counsel also argued why Chen would not be prejudiced if the default was set aside.  The circuit court agreed.  As those arguments are not at issue, they are not detailed here.

[8]    Because the circuit court found the first prong, that the nondefaulting party would not be prejudiced, was satisfied, the arguments regarding this prong have not been included.

> request additional time to respond to the complaint. So plaintiff cannot be faulted, although the court does note that the plaintiff[] moved extremely expeditiously giving virtually no time for the defense to have additional extensions of time to respond to the complaint. But that does not prejudice the plaintiff's right to pursue the default remedies.
>
> So the court is unable to find the existence of a meritorious defense as to liability, and the court is unable to find that the default entered as a result of any excusable neglect on the part of the defendants. So there is no basis for this court setting aside the entry of default.
>
> But the court does recognize that the record shows the defendants appear to have at least arguments regarding -- and potential defenses regarding damages. So what the court will do is deny the motion to set aside the entry of default. However, in denying the motion, the court will permit the defendant to file an answer setting forth their defenses to the damages claims in this case. The answer must be filed by next Friday, July 26, 2013.

(Emphases added.) The circuit court entered its order denying Defendants' motion to set aside entry of default on August 8, 2013.

**B.    Procedural and factual background following the July 13, 2013 hearing on Defendants' motion to set aside entry of default**

Defendants then filed their answer on July 26, 2013. The answer set forth eight defenses centering around the assertion that Chen was not only fully paid, but overpaid by Defendants and the insurance companies because she had misrepresented her work in billing codes. According to Defendants, Chen was therefore not owed any damages; overpayments should have offset any payments and Chen should return overpayments to Defendants; Chen should not be allowed equitable relief because she had unclean hands for overcharging patients; Chen's request for

21

damages (presumably for her fraud claim regarding the "dangling" partnership offer) was not related to the oral agreement between Chen and Defendants regarding compensation for her services, and therefore Chen, was not entitled to any claim for damages based on a "pending arrangement" because no consideration was exchanged; and there was a lack of clear and convincing evidence to support Chen's claims.

On August 19, 2013, the circuit court set a trial for September 29, 2014.  However, prior to that date, Chen filed a second motion for default judgment ("motion for default judgment") on August 4, 2014.  Defendants filed their opposition memorandum on August 19, 2014.  A hearing was held on August 27, 2014.  The circuit court agreed with Chen that liability was not at issue because Defendants had defaulted and therefore the well-pled allegations of the complaint were required to be taken as true.[9]  Therefore, the circuit court also agreed to enforce the compensation formula Chen had asserted.  Defendants, however, challenged the calculation of damages, and the circuit

---

[9]  Once a default is established, a defendant cannot contest the factual allegations of a plaintiff's claim for relief, but the court considers whether the unchallenged facts constitute a legitimate cause of action.  10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Civ. § 2688.1 (4th ed. 2019).

court inquired whether it was "required to convene[,] at a minimum[,] a proof hearing if not a trial on damages."[10]

Chen responded that she was required to only present "a prima facie case or at least sufficient evidence to pass a motion for directed verdict," and that she had presented "substantially more evidence than that."[11]  Chen had provided a timely expert report by a CPA evidencing her damages.  Chen argued Defendants would have to present evidence to refute her evidence, but that an expert report attached to Defendants' opposition memorandum had not been produced in discovery and should not be able to be relied upon.  The one document Defendants had attached to their opposition memorandum that was previously produced was Exhibit I, a report by Gloria Thompson.  Chen argued, however, that Gloria Thompson's report was based on

---

[10]    As noted in Dela Cruz v. Quemado, 141 Hawai'i 338, 346, 409 P.3d 742, 750 (2018), the ICA in Hupp v. Accessory Distribs. Inc., 1 Haw. App. 174, 616 P.2d 233 (App. 1980) interpreted HRCP Rule 55(b)(2) to provide discretion for courts to order proof of liability hearings before entering default judgment.  1 Haw. App. at 179-180, 616 P.2d at 236-37 ("trial courts must be given leeway in their discretion to require proof of liability in the support of a default judgment").  Hupp held that in such a hearing, the nondefaulting party must adduce evidence which would be sufficient at trial to overcome a motion for directed verdict.  1 Haw. App. at 180, 616 P.2d at 237.

[11]    Hawai'i appellate decisions have, however, consistently held that even when a defendant cannot contest liability after entry of default, the defendant may still contest the amount of its liability at proof hearings. See Occidental Underwriters of Hawaii, Ltd., v. Am. Sec. Bank, 5 Haw. App. 431, 433, 696 P.2d 852, 854 (App. 1985) ("Upon the entry of default, [defendant] had lost its standing to contest the fact of its liability, but still had standing to contest the amount of its liability." (citations omitted)); Kamaunu v. Kaaea, 99 Hawai'i 432, 439, 56 P.3d 734, 741 (App. 2002) (requiring trial courts to permit parties in default to contest damages at proof hearings).  We affirmed these requirements in Dela Cruz, 141 Hawai'i at 347, 409 P.3d at 751.

Defendants' purported compensation formula, which differed from the one Chen had pled in her complaint, and which also differed from the formula achieved when examining past payments received by Chen that were not in dispute; moreover, Defendants did not provide any supporting documents.  Accordingly, Chen argued "a trial would serve no purpose here."

Defendants responded that the compensation formula was based on income produced, i.e., amounts collected, not billed.  When the circuit court asked what the proper amounts asserted by Defendants were, Defendants pointed to Exhibits E, F, G, and H, which had been produced as Hawai'i Rules of Evidence Rule 1006 "summaries" of the over 5,000 pages of financial documents originally produced to Chen in response to her request for production.  Defendants asserted the summaries were created by office staff over the course of four to five months under Mah's supervision of reconciliations performed by the office.  Chen also challenged the admissibility of the exhibits because they were newly created documents and she was not given the opportunity to examine Defendants' numbers; further, Chen questioned whether Mah could attest that he made or verified each of the entries in the exhibits.

The circuit court ultimately concluded it could not consider the evidence produced by Defendants in opposition because trial "should not be by ambush."  Instead, the circuit

court relied on the well-pleaded facts in the complaint and the evidence submitted by Chen and granted Chen's motion for default judgment as to Count III (breach of contract) and Count VIII (unjust enrichment).  Damages were ordered in the total amount of $406,392.89; $335,731.68 plus interest was awarded for damages for 2011, and $70,661.21 was awarded for damages for 2012.  The circuit court denied the motion for default judgment as to Count IV (conversion), Count V (fraud), Count VI (intentional/negligent misrepresentation), and Count XI (constructive trust/equitable lien).[12]

Prior to the bench trial regarding damages on the remaining counts of the complaint, on August 13, 2014, Chen filed a motion to strike previously unidentified witnesses, in which she noted the circuit court had issued a trial setting status conference order dated August 19, 2013, that set forth various trial deadlines, including the submission of expert reports by May 30, 2014 and the final naming of witnesses by July 1, 2014, and that Defendants failed to meet these deadlines with their untimely August 11, 2014 filing.  At a hearing held on September 10, 2014, the circuit court denied the motion as to non-expert

---

[12]    This court subsequently ruled in Dela Cruz that "[i]n future cases, when trial courts deny a motion for entry of default judgment, the appropriate subsequent course of action is to set aside the default, and allow the case to proceed on the merits."  141 Hawai'i at 347, 409 P.3d at 751.  The circuit court had, however, already awarded damages based on the breach of contract and unjust enrichment counts.

testimony, i.e., the court would permit lay witnesses to testify, but granted the motion as to expert testimony as it had previously ordered disclosure by a certain date.

A bench trial on damages only was then held on September 30, 2014 through October 3, 2014 on the following four claims: Count IV (conversion), Count V (fraud), Count VI (intentional/negligent misrepresentation), and Count XI (constructive trust/equitable lien).  The remaining unresolved claims, Count I (declaratory judgment), Count II (accounting), Count VII (intentional infliction of emotional distress), Count IX (statutory fraudulent transfer), Count X (common law fraudulent transfer), and Count XII (punitive damages) were dismissed without prejudice and were not the subject of the trial.

At trial, the circuit court received testimony from Chen, Mah, and people who previously worked for Defendants.  Parties submitted their post-trial memoranda on November 7, 2014.  At a post-trial hearing held on November 10, 2014, the circuit court summarized its decision and tasked Chen with drafting more detailed findings of fact and conclusions of law.  In sum, the circuit court denied Count IV (conversion) for Chen's failure to present legal authority; denied Count X (constructive trust/equitable lien) for insufficiency of the evidence; found in favor of Chen as to Count V (fraud), and in so doing found

Mah to not be a credible witness; and also found in favor of Chen as to Count VI (intentional/negligent misrepresentation). As to the two claims that it found in favor of Chen, Counts V (fraud) and VI (intentional/negligent misrepresentation), the circuit court noted the damages awarded were the same damages previously awarded to Chen by it by default judgment for Counts VIII (unjust enrichment) and III (breach of contract). Accordingly, the circuit court entered judgment in favor of Chen and against Defendants in the same amounts indicated previously. On July 6, 2016, the circuit court entered its findings of fact ("FOF") and conclusions of law ("COL") and final judgment.

On July 18, 2016, Defendants filed a motion for reconsideration and/or for new trial, in which Defendants asserted five grounds:

> A. Defendants have obtained newly discovered evidence regarding claims by more than 50 of Plaintiffs former patients that will be filed with the Regulated Industries Complaints Office of the State of Hawaii Department of Commerce and Consumer Affairs. These claims directly impact the amount of compensation and "damages" allegedly owed to Plaintiff.
>
> B. An accountant has determined that Dr. Chen was overpaid by $161,110.
>
> C. The Court committed clear legal error by finding a fiduciary relationship/duty in the independent contractor context.
>
> D. The Court committed clear legal error by applying the law governing an employer/employee relationship to an independent contractor.
>
> E. The Court committed clear legal error by piercing the corporate veil in violation of Hawaii Supreme Court precedent.

At a September 6, 2016 hearing, the circuit court denied this motion. Although the circuit court expressed concern that offsets to Chen's claims for damages may exist based on subsequent remedial measures taken by Defendants to address patient complaints against Chen for poor quality of service, that defense was never pled by Defendants, and even if it had been, Defendants could have brought forth such evidence at trial, but failed to do so. For this reason also, the circuit court declined to re-open the case to receive such evidence. The circuit court also concluded Defendants' efforts to introduce a report by an accountant, William Andersen, showing Chen was overpaid, did not constitute grounds for a new trial because his testimony had previously been stricken by the circuit court for Defendants' failure to comply with the circuit court's trial setting order. Lastly, the circuit court concluded Defendants' argument that it had "pierced the corporate veil" when it held Mah liable for the acts of Corporation did not constitute grounds to grant their motion as the complaint was styled against both Mah and the Corporation.

## C.   Appeal to the ICA

Defendants timely filed a notice of appeal to the ICA, and presented four points on appeal:

> [1.]  The circuit court violated the public policy favoring resolution of cases on the merits and failed to properly apply the Hawaiʻi Supreme Court's test regarding setting aside an entry of default. The record shows that, although

28

> Dr. Mah and the Company did not timely file an Answer to the Complaint, Dr. Mah did engage in months of informal discovery with Appellee's counsel, providing documents and information requested by Appellee and her counsel.  This process went for approximately seven months before Appellee filed a Motion for Default Judgment.
>
> [2.]  The circuit court erred in excluding substantial evidence of liability and/or damages.
>
> [3.]  The circuit court erred in denying Dr. Mah and the Company's Motion for Reconsideration and/or for New Trial, given newly discovery [sic] evidence of Appellee's malpractice, substantial evidence of overpayments to Appellee, the improper creation of new law regarding fiduciary duties, applying employment law to an independent contractor relationship, and improperly piercing the corporate veil.
>
> [4.]  The circuit court erred by signing scripted findings of fact and conclusions of law, a practice that has been widely condemned by numerous courts.

The ICA rejected the Defendants' challenges.

As to the first point on appeal, the ICA cited BDM, Inc. v. Sageco, Inc., 57 Haw. 73, 549 P.2d 1147 (1976), which had set forth a three-prong test to determine whether to set aside an entry of default:

> [A] motion to set aside a default entry or a default judgment may and should be granted whenever the court finds (1) that the nondefaulting party will not be prejudiced by the reopening, (2) that the defaulting party has a meritorious defense, and (3) that the default was not the result of inexcusable neglect or a wilful act.

Chen, SDO at 2 (citing BDM, 57 Haw. at 76, 549 P.2d at 1150). The ICA noted that "[i]f a moving party fails to establish any prong of the test, it is not an abuse of discretion to refuse to set aside the default."  Id. (citing Citicorp Mortg., Inc. v. Bartolome, 94 Hawai'i 422, 439, 16 P.3d 827, 844 (App. 2000); Park v. Tanaka, 75 Haw. 271, 281, 859 P.2d 917, 922 (1993);

Dillingham Inves. Corp. v. Kunio V. Yokoyama Tr., 8 Haw. App. 226, 236, 797 P.2d 1316, 1321 (1990)).

The ICA concluded the circuit court did not err in denying Defendants' motion to set aside entry of default.  Chen, SDO at 5.  As to Defendants' argument that the circuit court erred when it concluded Defendants lacked a meritorious defense because it focused only on the fraud claim and failed to address the remaining eleven claims, the ICA stated the circuit court had addressed all of the claims:

> The Circuit Court did not limit its determination to Mah's defenses against the fraud claim but instead stated, in general terms, that "[Defendants'] arguments really go to damages which they are not precluded from litigating even if they are in default."  While [defense] counsel . . . repeatedly limited his argument to the fraud claims, in its ruling, the Circuit Court did not limit its ruling to just the fraud claim.

Chen, SDO at 3.

The ICA also concluded Defendants' argument that their failure to answer the complaint was the result of excusable neglect lacked merit.  Chen, SDO at 3.  The ICA observed that

> [t]he Hawaiʻi Supreme Court has recognized that circumstances that do not rise to the level of excusable neglect include a defendant's failure to answer a properly served complaint without any reason, for an improper reason, or without seeking the approval or extension from the court, as well as circumstances in which there is a lengthy delay between the entry of default and the filing of the motion to set aside the default.

Chen, SDO at 3-4 (citations omitted).  The ICA highlighted that Defendants had been made fully aware of the nature of Chen's demands and concerns, that an impasse had been reached, and that

30

litigation was imminent.  Chen, SDO at 4.  Moreover, although

Mah may have been surprised as to the filing of the complaint

given the various discussions he had with King for weeks, Mah

had not cited any reason for failing to respond to the complaint

once it had been filed.  Id.

As to the second point on appeal, the ICA concluded

Defendants failed to present arguments in accordance with Hawai'i

Rules of Appellate Procedure ("HRAP") Rule 28(b)(7) (2016)[13] and

therefore waived the argument.  Chen, SDO at 6.  In any event,

the ICA concluded the argument lacked merit because it was well

within the circuit court's discretion to strike the testimony of

Defendants' witnesses for their failure to comply with its

deadline for disclosing witnesses, and Defendants presented no

cogent argument to demonstrate the circuit court abused its

discretion in doing so.  Id.

As to the third point on appeal, the ICA concluded the

circuit court did not err when it denied Defendants' motion for

---

[13]    HRAP Rule 28(b)(7) states in relevant part:

> **(b) Opening Brief.**  Within 40 days after the filing of the record on appeal, the appellant shall file an opening brief, containing the following sections in order here indicated:

> . . . .

> (7) The argument, containing the contentions of the appellant on the points presented and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on. . . . Points not argued may be deemed waived.

31

new trial, as the verdict was not against the manifest weight of the evidence.  Chen, SDO at 8-9 (citing Richardson v. Sport Shinko (Waikiki Corp.), 76 Hawai'i 494, 503, 880 P.2d 169, 178 (1994); Miyamoto v. Lum, 104 Hawai'i 1, 11, 84 P.3d 509, 519 (2004)).  Although Defendants contended that, at trial, there was substantial evidence demonstrating they overpaid Chen by $161,100, thereby offsetting the damages awarded to Chen, Chen had presented testimonial evidence of the compensation formula agreed upon with Mah, documentary evidence of past compensation and changes to her compensation in November 2011, and other evidence regarding Mah's promises to include her in a partnership and Chen's consequent increased production due to those promises; further, the circuit court had found Mah to not be credible.  Chen, SDO at 9.

As to the fourth point on appeal, the ICA noted Defendants presented no authority that it was improper or prohibited for a court to adopt findings of fact or conclusions of law drafted by a party, as the circuit court had directed.  Chen, SDO at 10. Additionally, to the extent that the circuit court may have erred in entering FOF 34 and COLs FF, GG, ZZ, and AAA, in which the circuit court determined or otherwise implied a fiduciary employer-employee relationship existed between Chen and Mah, the ICA concluded such a relationship did not serve as the basis for the circuit court's determination of damages on the fraud and

misrepresentation claims.  Id.  According to the ICA, any such error was therefore harmless and did not warrant relief.  Chen, SDO at 10-11 (citing Dupree v. Hiraga, 121 Hawai'i 297, 320 n.28, 219 P.3d 1084, 1107 n.28 (2009)).  Similarly, Defendants' argument that the circuit court erroneously pierced the corporate veil was inapposite to the circuit court's determination that Mah was liable for fraud and misrepresentation on the basis of his representations to Chen as an agent of Corporation, which exposed him to personal liability.  Chen, SDO at 11 (citing Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. P'ship, 115 Hawai'i 201, 228 n.31, 166 P.3d 961, 988 n.31 (2007)).

Accordingly, the ICA affirmed the circuit court's July 6, 2016 final judgment.  See id.

## D.    **Application for writ of certiorari**

Defendants timely filed their application for a writ of certiorari ("Application") on June 27, 2019 from the May 3, 2019 judgment on appeal entered by the ICA pursuant to its March 14, 2019 SDO.

Defendants present the following five questions in their Application:

> [1.]  Did the ICA gravely err in failing to set aside the circuit court's entry of default, where (1) the record shows the circuit court failed to analyze all twelve causes of action in the complaint regarding meritorious defenses and the record contains substantial evidence of a meritorious defense to one or more causes of action; and

33

(2) the circuit court failed to consider the lulling of a pro se party into inaction by engaging in months of discovery and communications before and <u>after</u> obtaining an entry of default, then using a long delay to help justify a purported failure to defend the case.

[2.] Did the ICA gravely err in creating new law in Hawai['] i by affirming the circuit court's finding of a fiduciary relationship in an independent contractor relationship?

[3.] Did the ICA gravely err in creating new law in Hawaii by permitting the circuit court to apply the law regarding employers and employees to an independent contractor relationship?

[4.] Did the ICA gravely err in allowing the circuit court to pierce the corporate veil and hold a shareholder liable for the purported acts of a corporation without any allegation or finding of alter ego/piercing the corporate veil?

[5.] Did the ICA gravely err in adopting scripted findings that turned what amounted to an advocate's trial brief into findings of [f]act and conclusions of law?

On certiorari, the parties reiterate the arguments they had presented to the ICA.[14]

### III.   Standards of Review

### A.   Motion to set aside an entry of default

"The application of HRCP Rule 55 . . . is reviewed for abuse of discretion." <u>Cty. of Haw. v. Ala Loop Homeowners</u>, 123 Hawai'i 391, 404, 235 P.3d 1103, 1116 (2010) (citation omitted),

---

[14]    On August 28, 2019, we ordered that the parties submit supplemental briefs not exceeding ten pages by September 18, 2019, addressing the following question:

> Is a movant filing a motion to set aside entry of default under Hawai'i Rules of Civil Procedure Rule 55(c) required to show (1) that the non-defaulting party will not be prejudiced by the reopening, (2) that the defaulting party has a meritorious defense, and (3) that the default was not the result of inexcusable neglect or a wilful act?

Consistent with their previous submissions, the parties answered in the affirmative.

abrogated on other grounds by Tax Found. of Haw. v. State, 144

Hawai'i 175, 439 P.3d 127 (2019).

## B.     Motion for reconsideration

"The trial court's ruling on a motion for reconsideration

is reviewed under the abuse of discretion standard."  Kamaka v.

Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 104, 176 P.3d

91, 103 (2008) (citation omitted).  Further,

> [a]s this court has often stated, "the purpose of a motion
> for reconsideration is to allow the parties to present new
> evidence and/or arguments that could not have been
> presented during the earlier adjudicated motion."
> Reconsideration is not a device to relitigate old matters
> or to raise arguments or evidence that could and should
> have been brought during the earlier proceeding.

Id. (alteration in original) (citation omitted).

## C.     Motion for new trial

> Both the grant and the denial of a motion for new trial
> [are] within the trial court's discretion, and we will not
> reverse that decision absent a clear abuse of discretion.
> An abuse of discretion occurs "where the trial court has
> clearly exceeded the bounds of reason or disregarded rules
> or principles of law or practice to the substantial
> detriment of a party litigant."  It is also within the
> appellate court's discretion to limit the issues of a new
> trial upon remand.

Costales v. Rosete, 133 Hawai'i 453, 465, 331 P.3d 431, 443

(2014) (alteration in original) (citations omitted).

### IV.  Discussion

## A.     Counts remaining on appeal

As a preliminary matter, following the dismissal without

prejudice of the following claims, the circuit court dismissed

them with prejudice in its final judgment, and they are

therefore not further discussed in this opinion: Count I
(declaratory judgment), Count II (accounting), Count VII
(intentional infliction of emotional distress), Count IX
(statutory fraudulent transfer), Count X (common law fraudulent
transfer), and Count XII (punitive damages).  Also not discussed
are Count IV (conversion) and Count XI (constructive
trust/equitable lien), as the circuit court had ruled against
Chen on those claims after the bench trial and she did not
appeal.  Thus, at issue are Count III (breach of contract) and
Count VIII (unjust enrichment), for which the circuit court
granted Chen a default judgment with damages in the amount of
$406,392.89, and Count V (fraud) and Count VI
(intentional/negligent misrepresentation), for which the circuit
court awarded the same damages after the bench trial on damages.

**B.    Whether the circuit court erred in denying Defendants' HRCP Rule 55(c) motion to set aside entry of default**

**1.    Standard governing HRCP Rule 55(c) motions**

HRCP Rule 55(c) governs the setting aside of an entry of
default.  HRCP Rule 55(c) provides that "[f]or good cause shown
the court may set aside an entry of default and, if a judgment
by default has been entered, may likewise set it aside in
accordance with Rule 60(b)."

The circuit court and the ICA cited to BDM for the
proposition that Hawaiʻi courts apply the three-prong test

36

applicable to HRCP Rule 60(b) motions to determine whether to

grant a motion to set aside an entry of default filed pursuant

to HRCP Rule 55(c):

> [A] motion to set aside a default entry or a default
> judgment may and should be granted whenever the court finds
> (1) that the nondefaulting party will not be prejudiced by
> the reopening, (2) that the defaulting party has a
> meritorious defense, and (3) that the default was not the
> result of inexcusable neglect or a wilful act.

Chen, SDO at 2.[15]

---

[15]    In BDM, this court referred to the "excusable neglect" standard
governing HRCP Rule 60(b) motions despite the "good cause" language of HRCP
Rule 55(c) on the premise that the setting aside of a defendant's default,
alone, would not allow litigation to proceed, and that the circuit court
would also need to grant an extension of time for the defendant to answer the
complaint, else "an anomalous situation in which [defendants] would be forced
to remain in default but [plaintiff] would be foreclosed from obtaining entry
of a default" would result.  57 Haw. at 75, 549 P.2d at 1149.  BDM stated
that the "excusable neglect" standard of HRCP Rule 6(b) governing
enlargements of time for performing an act "required or allowed to be done at
or within a specified time" would therefore also have to be considered with
respect to whether an extension of time to answer the complaint should be
considered.  57 Haw. at 75-76, 549 P.2d at 1149.

   The premise that an official extension of time pursuant to the
"excusable neglect" standard would be necessary to allow a circuit court
defendant to file an answer to the complaint after expiration of the twenty
days provided for by HRCP Rule 12(a) (2000) was, however, mistaken.  If
default has not been requested and entered pursuant to HRCP Rule 55(a), there
is no HRCP rule rendering an answer filed after twenty days of service of
process ineffective. In fact, in our circuit courts, counsel and parties
often provide the courtesy of informally extending time for answering
complaints without court involvement, and simply do not request a formal
entry of default until after the courtesy time has expired.  See Guidelines
of Professional Courtesy and Civility for Hawaiʻi Lawyers Section 2(a) (2018)
("[A] lawyer who manifests professional courtesy and civility [] [a]grees to
reasonable requests for extensions of time or continuances without requiring
motions or other formalities.").  Thus, BDM's premise for juxtaposing the
"excusable neglect" standard under HRCP Rule 6(b) and HRCP Rule 60(b) to HRCP
Rule 55(c) motions to set aside default judgments was in error.  In any
event, BDM further noted that "[i]t is difficult for us to imagine a case in
which 'good cause' might be found for setting aside an entry of default and
yet 'excusable neglect' for the failure to file the answer, which failure
occasioned the entry of the default, should not also be found."  57 Haw. at
76, 549 P.2d at 1149.

Although HRCP Rule 55(c) provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)[,]" the parties, the circuit court, and the ICA all agree Defendants were required to also meet the three-prong test applicable to motions to set aside default judgments under HRCP Rule 60(b), which requires a showing that "(1) the nondefaulting party will not be prejudiced by the reopening, (2) that the defaulting party has a meritorious defense, and (3) that the default was not the result of inexcusable neglect or a wilful act."  BDM, 57 Haw. at 76, 549 P.2d at 1150.

In BDM, a per curiam opinion, this court stated:

> [D]efaults and default judgments are not favored and that any doubt should be resolved in favor of the party seeking relief, so that, in the interests of justice, there can be a full trial on the merits. It should be noted that a motion to set aside a default entry, which may be granted under Rule 55(c) 'for good cause shown', gives the court greater freedom in granting relief than is available on a motion to set aside a default judgment where the requirements of Rule 60(b) must be satisfied. 10 Wright and Miller, Federal Practice and Procedure, Civ. § 2693 at 313 (1973). 'Despite these differences, the elements advanced in support of a motion under Rule 55(c) will be the same whether relief is sought from a default entry or from a default judgment.' Wright and Miller supra, Civ. s 2692 at 301.
>
> In general, a motion to set aside a default entry or a default judgment may and should be granted whenever the court finds (1) that the nondefaulting party will not be prejudiced by the reopening, (2) that the defaulting party has a meritorious defense, and (3) that the default was not the result of inexcusable neglect or a wilful act. 10 Wright and Miller, Federal Practice and Procedure § 2696 (1973). The mere fact that the nondefaulting party will be required to prove his case without the inhibiting effect of

> the default upon the defaulting party does not constitute prejudice which should prevent a reopening.

Id. (citations omitted).

Also, in Ala Loop Homeowners, we stated:

> Defaults are generally disfavored. See Rearden Family Trust v. Wisenbaker, 101 Hawai'i 237, 254, 65 P.3d 1029, 1046 (2003) (holding that "defaults and default judgments are not favored and [] any doubt should be resolved in favor of the party seeking relief, so that, in the interests of justice, there can be a full trial on the merits") (citations omitted). In BDM, Inc. v. Sageco, Inc., 57 Haw. 73, 549 P.2d 1147 (1976), this court held that a party seeking to set aside a default must demonstrate the following three factors:
>
> > In general, a motion to set aside a default entry or a default judgment may and should be granted whenever the court finds (1) that the nondefaulting party will not be prejudiced by the reopening, (2) that the defaulting party has a meritorious defense, and (3) that the default was not the result of inexcusable neglect or a wilful act.

123 Hawai'i at 423, 235 P.3d at 1135 (alteration in original).

The ICA has held that a defendant moving to set aside an entry of default pursuant to HRCP Rule 55(c) must satisfy the three-prong test applicable to HRCP Rule 60(b) motions, and has specifically held that all three prongs must be satisfied for a trial court to grant a motion to set aside entry of default. See The Nature Conservancy v. Nakila, 4 Haw. App. 584, 589-91, 671 P.2d 1025, 1030-31 (1983); Manley v. Mac Farms, Inc., 1 Haw. App. 182, 184-85, 616 P.2d 242, 244 (1980); Hupp, 1 Haw. App. at 177-78, 616 P.2d at 236. In addition, although this court has

not actually held that HRCP Rule 55(c) movants must satisfy the three prongs, our cases suggested as much in dicta.[16]

Despite the language of HRCP Rule 55(c) allowing entries of default to be set aside based only on a showing of "good cause," trial courts, including the circuit court in this case, were required to follow binding precedent, which held that parties seeking to set aside an entry of default pursuant to HRCP Rule 55(c) must satisfy the three-prong test for HRCP Rule 60(b) motions. Therefore, we analyze the circuit court and ICA rulings based on the standard that the circuit court was required to follow at the time of its ruling, which was that Defendants had the burden of establishing the following to prevail on their motion to set aside entry of default: (1) the nondefaulting party will not be prejudiced by the reopening, (2) the defaulting party has a meritorious defense, and (3) the default was not the result of inexcusable neglect or a wilful act. In addition, the burden was on Defendants to

---

[16] Along this line, if lack of "excusable neglect" is a requisite showing for a HRCP Rule 55(c) motion, then this clearly contradicts the plain language of the rule, which only requires "good cause," a much lower standard under Hawaiʻi law, which basically only requires a showing of "good cause" under the circumstances of the situation. In contrast, we have held that ignorance of the rules or law cannot be "excusable neglect." See Enos v. Pac. Transfer & Warehouse, Inc., 80 Hawaiʻi 345, 353, 910 P.2d 116, 124 (1996) (making it difficult for anyone to meet the lack of "excusable neglect" requirement of HRCP Rule 60(b) motions). Thus, incorporation of this HRCP Rule 60(b) requirement into a HRCP Rule 55(c) analysis violates the plain language of the rule.

establish that each prong had been satisfied.  See In re

RGB, 123 Hawai'i 1, 17, 229 P.3d 1066, 1082 (2010).

> **2.    The circuit court did not abuse its discretion by denying Defendants' HRCP Rule 55(c) motion to set aside entry of default**

As noted above, the circuit court ruled in favor of the

Defendants on the first prong regarding prejudice to Chen, but

ruled against the Defendants on the second and third prongs

regarding meritorious defenses and excusable neglect.  In their

first question on certiorari, Defendants allege the ICA erred in

failing to set aside the circuit court's entry of default

because: (1) with respect to the second prong, the record shows

the circuit court failed to analyze all twelve causes of action

in the complaint regarding meritorious defenses and the record

contains substantial evidence of a meritorious defense to one or

more causes of action; and (2) with respect to the third prong,

the circuit court failed to apply this court's stated policy of

favoring a trial on the merits and failed to consider the

lulling of a pro se party into inaction by engaging in months of

discovery and communications before and after obtaining an entry

of default, then using a long delay to help justify a purported

failure to defend the case.

We address the third prong first because it is dispositive.

To prevail, Defendants had the burden of establishing that their

default "was not the result of inexcusable neglect or a wilful

act."  Under Hawai'i law, ignorance of the rules or law cannot be "excusable neglect."  Enos, 80 Hawai'i at 353, 910 P.2d at 124 (1996).

Defendants argue this court held that courts are to resolve any doubt in favor of the party seeking relief.  See Rearden Family Trust, 101 Hawai'i at 254, 65 P.3d at 1046 ("We affirm that defaults and default judgments are not favored and that any doubt should be resolved in favor of the party seeking relief, so that, in the interests of justice, there can be a full trial on the merits." (internal quotation marks and citations omitted)).

Defendants also argue the ICA gravely erred when it affirmed the circuit court's denial of their motion to set aside default, as the circuit court failed to consider the "lulling, discovery, and 'lengthy delay'" in Chen's filing for default judgment.  Importantly, Defendants assert that both before and after the complaint was filed, King "engaged in 'multiple follow-up telephone discussions' with Dr. Mah," which had the "effect of lulling Dr. Mah into believing this dispute would be resolved if he simply cooperated with [King]."

The record, however, does not reflect any continued discussions between the parties after the complaint was filed. The citations to the record by defense counsel to support the assertion that Mah and King had "multiple follow-up telephone

discussions" following the filing of the complaint do not support the defense's position. Rather, the citation is to King's declaration regarding the contents of a September 10, 2012 demand letter, which was sent prior to the filing of the complaint on October 3, 2012.

Indeed, as pointed out by Chen and the ICA, the record does not reflect any communications between Mah and King after October 8, 2012, when the complaint was served. See Chen, SDO at 4-5 ("Mah has not cited any reason for failing to respond to the Complaint once it had in fact been filed." (citation omitted)). Even Mah's phone logs do not show any conversations with King following October 3, 2012. In sum, according to the record, upon service of the complaint on October 8, 2012, all non-court related communication between the parties had ceased.

Accordingly, even if there had been some informal discovery and efforts to avoid litigation before October 3, 2012, and even if all doubts were resolved in favor of Defendants regarding Mah's misunderstanding of the parties' alleged impasse, Defendants fail to identify anything in the record to explain why, after the filing of the complaint, Mah continued to be "lulled" by King into thinking that litigation could be avoided if Mah cooperated with King; there simply was no further communication between them. In other words, although Mah asserts he never realized King was adversely taking action

against him <u>while</u> negotiating a resolution, any "negotiations" had ceased as of the filing of the complaint. <u>See Chen</u>, SDO at 5 ("Mah does not assert that there was any effort to continue these discussions after the Complaint was filed, and Mah failed to seek any extensions from the Circuit Court to, for example, obtain more time to resolve the dispute out of court. . . . Mah [did not] file[] the motion to set aside the entry of default [until] after Dr. Chen had filed her First Motion for Default Judgment, nearly nine months following the filing of the Complaint.").[17]

The record reflects that during the pre-complaint discussions, King asked Mah if he had an attorney as King preferred to speak to Mah's attorney, but Mah indicated "he did not have [an attorney] but had spoken to a friend who was an attorney and did not want to incur the high expenses of an attorney." Then, despite service of the complaint on October 8, 2012, and prompt notice of the November 2, 2012 entry of default, Mah took no action until being served with Chen's May 24, 2013 motion for default judgment. Mah is not an uneducated person lacking resources or access to counsel. Under the circumstances, the circuit court did not abuse its discretion in

_____

[17]    Mah's declaration dated June 18, 2013, does not supply a different timeline of events. Additionally, it vaguely states that Mah did not learn until "recently" of the entry of default, even though he was served with notice of the entry of default on or about November 2, 2012.

ruling the Defendants failed to show that their default "was not the result of inexcusable neglect or a wilful act."

Defendants' failure to meet this prong is dispositive.[18]

## C.  Prospectively, a HRCP Rule 55(c) motion to set aside entry of default is to be evaluated based only on whether there has been a showing of "good cause"

### 1.  Prospective new standard governing HRCP Rule 55(c)

As explained in Section IV.B.1 above, HRCP Rule 55(c), which governs the setting aside of an entry of default provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."  Thus, the plain language of HRCP Rule 55(c) requires only that a party

---

[18]     Defendants' remaining assertions on certiorari also lack merit.  The circuit court also did not abuse its discretion on the second prong regarding meritorious defense as the circuit court did not limit the hearing on their motion to set aside entry of default to a discussion of the fraud claim, as they assert; rather, the circuit court invited arguments regarding Defendants' alleged meritorious defenses as to all counts. Defendants' assertion that the circuit court erred in finding Corporation had a fiduciary duty to provide Chen with documentation to support her compensation was not clearly erroneous under the circumstances.  Lahaina Fashions, Inc. v. Bank of Haw., 131 Hawaiʻi 437, 456, 319 P.3d 356, 375 (2014) (discussing situations that can give rise to a fiduciary relationship). Defendants assert the circuit court precluded evidence of overpayments, offsets, and/or set-offs, but do not identify what specific evidence was wrongfully precluded.  Defendants do not explain why it was not within the circuit court's discretion to strike Defendants' expert testimony for failure to comply with the August 19, 2013 order setting various trial deadlines. Defendants argue improper piercing of the corporate veil when the circuit court held Mah personally liable, but fail to address the circuit court's conclusion that Mah's liability did not stem from his status as a shareholder.  Even if the circuit court had ruled Mah an alter ego of Corporation, however, it does not appear this would have constituted error. See Calipjo v. Purdy, 144 Hawaiʻi 266, 277-78, 439 P.3d 218, 229-30 (2019) (discussing alter ego factors under Hawaiʻi law).  Finally, contrary to Defendants' assertion that the circuit court adopted "scripted findings," the record shows the circuit court provided a detailed oral ruling and then ordered King to draft proposed findings of fact and conclusions of law consistent with its decision.

show "good cause" to set aside an entry of default and indicates that the setting aside a default judgment is governed by HRCP Rule 60(b).

Our cases have also expressed our policy of disfavoring defaults and default judgments and of resolving any doubt in favor of the party seeking relief, so that, in the interests of justice, there can be a full trial on the merits. BDM, 57 Haw. at 76, 549 P.2d at 1150; Ala Loop Homeowners, 123 Hawai'i at 423, 235 P.3d at 1135. And we have specifically noted that a motion to set aside a default entry, which may be granted under HRCP Rule 55(c) "for good cause shown," gives the trial court greater freedom in granting relief than is available on a motion to set aside a default judgment where the requirements of HRCP Rule 60(b) must be satisfied. BDM, 57 Haw. at 76, 549 P.2d at 1150; Ala Loop Homeowners, 123 Hawai'i at 423, 235 P.3d at 1135.

Yet, after this court's 1976 per curiam opinion in BDM, our appellate opinions have held that motions to set aside entries of default under HRCP Rule 55(c) must satisfy the three-prong test for HRCP Rule 60(b) motions.

We acknowledge that under federal law, the "good cause" standard governing vacating an entry of default under Federal Rules of Civil Procedure ("FRCP") Rule 55(c) is the same standard that governs vacating a default judgment under FRCP

Rule 60(b).  <u>Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.</u>, 375 F.3d 922, 925 (9th Cir. 2004).[19]   Yet, notwithstanding their persuasiveness, interpretations of the FRCP by federal courts are by no means conclusive with respect to our interpretation of any rule within the HRCP.  <u>Kawamata Farms, Inc. v. United Agri Prods.</u>, 86 Hawai'i 214, 256, 948 P.2d 1055, 1097 (1997).

The discussions regarding HRCP Rule 55(c) in this opinion persuade us to overrule our precedent to the contrary and hold that HRCP Rule 55(c) motions are governed only by the plain language "good cause" standard explicitly stated in the rule. Therefore, movants seeking to set aside an entry of default pursuant to HRCP Rule 55(c) need no longer satisfy the three-

---

[19]   Even in federal courts, however,

> [a]lthough the more specific grounds for relief set forth in Rule 60(b) [were] frequently [] regarded as included within the concept of "good cause" for purposes of Rule 55(c), the courts ha[d] generally acknowledged that "good cause" is a broader and more liberal standard than anything found in Rule 60(b), and that, consequently, something less may be required to warrant the opening of an entry of default than would be necessary to set aside a default judgment. (Citation omitted.) Thus, while "excusable neglect" has often been considered a reason for inaction sufficient to satisfy the good cause test, several courts have recognized that relief may be granted under Rule 55(c) even when the neglect giving rise to the default cannot, strictly speaking, be characterized as excusable.

William H. Danne, Jr., Annotation, <u>What Constitutes "Good Cause" Allowing Federal Court to Relieve Party of his Default Under Rule 55(c) of Federal Rules of Civil Procedure</u>, 29 A.L.R. Fed. 7, § 2[a] (1976), available at https://www.westlaw.com/Document/I512442d1136011da931cf6e6a5b3cd63/View/FullText.html?transitionType=Default&contextData=(sc.Default)&VR=3.0&RS=cblt1.0 (citations omitted).

prong test applicable to HRCP Rule 60(b) motions to set aside default judgments.

Good reasons exist to have different standards governing HRCP Rule 55(c) motions to set aside entry of default as compared to HRCP Rule 60(b) motions to set aside default judgment.

First, a HRCP Rule 55(c) motion seeks to set aside an entry of default during a pending litigation in which judgment has yet to enter. In contrast, a HRCP Rule 60(b) motion to set aside a default judgment seeks to set aside a judgment on which not only the parties to the lawsuit, but also other members of the public, may have relied.

Second, HRCP Rule 60(b) motions require a showing of a lack of "excusable neglect," yet HRCP Rule 55(c) motions only require "good cause," which is a much lower standard under Hawai'i law, as further discussed below; yet we have held that ignorance of the rules or law cannot be "excusable neglect." Enos, 80 Hawai'i at 353, 910 P.2d at 124. Thus, even if a movant seeking to set aside an entry of default pursuant to HRCP Rule 55(c) can establish "good cause," the movant might not be able to meet the lack of "excusable neglect" requirement for HRCP Rule 60(b) motions. Thus, incorporation of this HRCP Rule 60(b) requirement into a HRCP Rule 55(c) analysis violates the plain language of HRCP Rule 55(c).

Finally, requiring a party seeking to set aside entry of default to satisfy the three-prong test applicable to HRCP Rule 60(b) motions is in tension with our expressed policy of disfavoring defaults and default judgment and of resolving any doubt in favor of the party seeking relief.  In this case, Defendants inexplicably waited more than seven months after service of the complaint to move to set aside the entry of default.  Yet, a plaintiff could move for entry of default twenty-one days after service of a complaint.  Even if a defendant filed a HRCP Rule 55(c) motion to set aside entry of default the very next day, under our current law, the defendant would be required to satisfy all three prongs of the HRCP Rule 60(b) test applicable to motions to set aside default judgments. This seems unfair.[20]

Thus, we therefore now hold that HRCP Rule 55(c) motions are governed only by the "good cause" standard explicitly stated in the rule, and that movants seeking to set aside an entry of

---

[20]    The Chief Justice opines that it is sensible to continue considering the HRCP Rule 60(b) factors to HRCP Rule 55(c) because nearly every federal circuit, as well as many states, apply them to motions to set aside entry of default.  We note, however, that in the federal courts, there is no counterpart to HRCP Rule 41(b)(2) (2012) allowing involuntary dismissals to be set aside for "good cause," and it appears a plaintiff seeking to reinstate claims involuntarily dismissed pursuant to FRCP Rule 41(b) must file a motion under FRCP Rule 60(b).  See Link v. Wabash R. Co., 370 U.S. 626, 630, 632 (1962).  Thus, our rule is different, and we actually erred by adopting the HRCP Rule 60(b) standard that contravenes our "good cause" rule. For all of these reasons, we disagree with the Chief Justice that the BDM factors are appropriate to consider in determining whether to set aside an entry of default.

default pursuant to HRCP Rule 55(c) need not satisfy the three-prong test applicable to HRCP Rule 60(b) motions to set aside default judgments.

Our holding is prospective.  Trial courts were required to follow ICA holdings requiring parties seeking to set aside an entry of default pursuant to HRCP Rule 55(c) to satisfy the three-prong test for HRCP Rule 60(b) motions.  Therefore, by holding that movants seeking to set aside an entry of default pursuant to HRCP Rule 55(c) need not satisfy the three-prong test, we are announcing a "new rule."  In announcing this "new rule," we must avoid unfair prejudice to parties and trial courts who have relied on binding precedent.  Therefore, our holding applies only to decisions on motions to set aside entry of default under HRCP Rule 55(c) after the date of this opinion.[21]  See Kahale, 104 Hawai'i at 348, 90 P.3d at 239.

### 2.    What constitutes "good cause"

In Doe v. Doe, 98 Hawai'i 144, 44 P.3d 1085 (2002), in the context of a Hawai'i Family Court Rules ("HFCR") Rule 59(a) motion for a new trial, we stated:

> "Good cause" [] "depends upon the circumstances of the individual case, and a finding of its existence lies largely in the discretion of the officer or court to which [the] decision is committed."

---

[21]    Our holding also applies to the identical language of Rules 55(c) in the District Court Rules of Civil Procedure as well as the Hawai'i Family Court Rules.

98 Hawaiʻi at 154, 44 P.3d at 1095 (second alteration in original) (citation omitted).[22]  Thus, whether "good cause" exists to set aside an entry of default will depend upon the circumstances of the individual case, and whether good cause exists will "lie[] largely in the discretion of the [] court to which [the] discretion is committed."

It is not possible to provide one definition of "good cause," as standards governing whether "good cause" exists depend not only upon the circumstances of the individual case, but also upon the specific court rule at issue.  This is because in addition to HRCP Rule 55(c) at issue in this case and HFCR Rule 59(a) referenced above, there are numerous court rules in which the phrase "good cause" appears."[23]  Many of these rules use the phrase "good cause" in contexts that differ from the "good cause" required to set aside an entry of default pursuant

---

[22]    Doe also referred to a Black's Law Dictionary entry, stating that "[t]he term 'good cause' has been defined to mean 'a substantial reason amounting in law to a legal excuse for failing to perform an act required by law.'"  98 Hawaiʻi at 154, 44 P.3d at 1095 (quoting Good Cause, Black's Law Dictionary (6th ed. 1990)).  We note that Black's Law Dictionary, however, now defines "good cause" as "[a] legally sufficient reason.  Good cause is often the burden placed on a litigant (usu. by court rule or order) to show why a request should be granted or an action excused."  Good Cause, Black's Law Dictionary (11th ed. 2019).

[23]    See, e.g., HRAP Rule 29(b) (2016) (allowing an appellate court to further extend time to file a brief only upon "good cause" shown); Rules of the Circuit Courts of the State of Hawaiʻi ("RCCH") Rule 7(e) (2007) (allowing continuance of a trial date only upon a showing of "good cause"); Hawaiʻi Rules of Penal Procedure ("HRPP") Rule 5(c)(5) (2014) (allowing a district court to continue a preliminary hearing after commencement "for good cause"); HRPP Rule 24(e) (2011) (stating that jurors shall be allowed to take notes during trial "[e]xcept upon good cause articulated by the court").

to HRCP Rule 55(c), and address different policy considerations dictating stricter or more lenient definitions of "good cause" or differing approaches on how to determine whether "good cause" exists depending on the court rule and circumstances at issue.[24]

The rule most analogous to HRCP Rule 55(c)'s "good cause" language is HRCP Rule 41(b)(2).  HRCP Rule 41(b)(2) provides in relevant part that an involuntary dismissal entered "[f]or failure to prosecute or to comply with these rules or any order of the court" "may be set aside and the action or claim reinstated by order of the court for good cause shown upon motion duly filed not later than 10 days from the date of the order of dismissal."  Just as we have stated "defaults and

---

[24]      For example, in the context of HRPP Rule 48(c)(8) (2000), which allows for periods of time a trial is delayed "for good cause" to be excludable from the six month period trial must commence, we have stated that "good cause means 'a substantial reason that affords legal excuse,'" that a period of delay must have been "unanticipated and not reasonably foreseeable," and a showing of the efforts taken by the government and judiciary to limit delay is required to establish "good cause."  State v. Abregano, 136 Hawaiʻi 489, 497-99, 363 P.3d 838, 846-48 (2015).  Thus, we have required the government to establish the existence of "good cause" and have required a "substantial reason" when the finding impacts a defendant's speedy trial rights under HRPP Rule 48 in a criminal case.  Id.  In contrast, in construing a former court rule allowing this court to extend the time for filing the record on appeal for "good cause," we summarily held that "[a]lthough dismissal of an appeal for late docketing is within the power of this court, mitigating factors in the instant case, such as the trial judge's delay in disposing of the motion to proceed in forma pauperis, justify this court's grant of an extension of time and weigh against a dismissal of the appeal."  State v. Kicklighter, 57 Haw. 566, 568, 560 P.2d 1304, 1306 (1977) (citation omitted).  Then, in the context of HRCP Rule 26(c) (2004), which allows a court to enter a protective order regarding discovery for "good cause," we have adopted a completely different approach, balancing an insurer's need for a person's health information against the injury that might result from the disclosure of that health information outside of the litigation.  Brende v. Hara, 113 Hawaiʻi 424, 431, 153 P.3d 1109, 1116 (2007).

Thus, we have taken different approaches to what constitutes "good cause" depending on the court rule and the circumstances at issue.

default judgments are not favored and that any doubt should be resolved in favor of the party seeking relief," BDM, 57 Haw. at 76, 549 P.2d at 1150, we have also stated that "[i]nvoluntary dismissals of a complaint with prejudice are not favored, and should be ordered only in extreme circumstances." In re Blaisdell, 125 Hawaiʻi 44, 49, 252 P.3d 63, 68 (2011). Also, in the context of an appeal of a HRCP Rule 41(b) dismissal and the denial of a motion for reconsideration of that dismissal, we also stated that "a corporation should be allowed an opportunity to secure counsel before permitting an entry of default against the corporation or, as in this case, dismissing the action, recognizing a 'preference for giving parties an opportunity to litigate claims or defenses on the merits[.]'" Shasteen, Inc. v. Hilton Hawaiian Village Joint Venture, 79 Hawaiʻi 103, 109, 899 P.2d 386, 392 (1995) (alteration in original) (citation omitted).

Thus, HRCP Rule 55(c) relates to setting aside an "involuntary" entry of default against a defendant, while HRCP Rule 41(b)(2) relates to its counterpart, the setting aside of an involuntary dismissal of a plaintiff's claims. Both HRCP Rules 41(b)(2) and 55(c) require "good cause" to allow the setting aside and reinstatement of a plaintiff's claims or a defendant's defenses.

53

In Ryan v. Palmer, 130 Hawai'i 321, 310 P.3d 1022 (App. 2013), the ICA addressed HRCP Rule 41(b)(2) in the context of reviewing a trial court's denial of a motion to set aside an involuntary dismissal for failure to file a pretrial statement as allowed by RCCH Rule 12(q) (2007). Because the language of RCCH Rule 12(q) is patterned after HRCP Rule 41(b)(2), the ICA applied HRCP Rule 41(b)(2) in its review of the RCCH Rule 12(q) dismissal. See 130 Hawai'i at 323, 310 P.3d at 1024. The ICA did not define what would constitute "good cause" for purposes of HRCP Rule 41(b)(2), but cited to our case law construing HRCP Rule 41(b)(2), including In re Blaisdell and Shasteen. Id.[25]

In In re Blaisdell, this court stated, "[O]ur case law informs us that the sanction of dismissal of a complaint with prejudice is one of last resort where lesser sanctions would not serve the interest of justice," and "an order of dismissal cannot be affirmed absent deliberate delay, contumacious

---

[25]    The Chief Justice posits that the comparison between HRCP Rules 41(b) and 55(c) and the application of HRCP Rule 41(b) cases to define HRCP Rule 55(c) are inapt because "the phrase 'good cause' is used in the context of setting aside sua sponte dismissals of plaintiffs' actions under Rule 41(b)[,]" while "under Rule 55(c), a party must satisfy the good cause standard to set aside an entry of default that was entered upon the opposing party's motion." HRCP Rule 41(b) does not, however, require "good cause" for a sua sponte dismissal; rather, it requires "good cause" to set aside a sua sponte dismissal, which is the same standard for setting aside an entry of default under HRCP Rule 55(c). In addition, the Chief Justice posits that because In re Blaisdell and Shasteen were appeals from orders of dismissal, not from denials of motions to set aside a dismissal for "good cause," it is unhelpful to review these cases. The Chief Justice ignores that we address the "good cause" factors in these cases because they were cited to by Ryan, which addressed a HRCP Rule 41(b) motion requiring "good cause" to set aside a dismissal. Ryan, 130 Hawai'i at 323, 310 P.3d at 1024.

54

conduct, or actual prejudice."  125 Hawai'i at 49, 252 P.3d at 68

(quoting Shasteen, 79 Hawai'i at 107, 899 P.2d at 390).  More

specifically, we stated that in order for a dismissal with

prejudice based on HRCP Rule 41(b) to not constitute an abuse of

discretion, there must be deliberate delay of the plaintiff

causing actual prejudice or contumacious conduct.  125 Hawai'i at

49-50, 252 P.3d at 68-69.  We noted that "[a]lthough the law

presumes injury from unreasonable delay, the presumption of

prejudice is rebuttable upon a showing that actual prejudice did

not occur."  125 Hawai'i at 49, 252 P.3d at 68 (citation omitted)

(emphasis added).  We also stated, however, that "[b]ecause the

interests of justice are best served by resolving a case on its

merits, absent a clear record of delay or contumacious conduct,

'the careful exercise of judicial discretion requires that a

[trial] court consider less severe sanctions and explain, where

not obvious, their inadequacy for promoting the interests of

justice.'"  Id. (second alteration in original) (quoting

Schilling v. Walworth Cty. Park & Planning Comm'n, 805 F.2d 272,

275 (7th Cir. 1986)).

Shasteen, cited by In re Blaisdell, in turn, also stated

that "a dismissal of a complaint is such a severe sanction, that

it should be used only in extreme circumstances where there is

clear record of delay or contumacious conduct and where lesser

sanctions would not serve the interest of justice."  79 Hawai'i

at 107, 899 P.2d at 390 (internal quotation marks, brackets, ellipsis, and footnote omitted) (quoting Lim v. Harvis Contr., Inc., 65 Haw. 71, 73, 647 P.2d 290, 292 (1982)).

Thus, although our opinions did not specifically so state, these rulings provide guidance regarding the "good cause" required to set aside a dismissal under HRCP Rule 41(b)(2), as Ryan concerned a HRCP Rule 41(b)(2) motion and relied on In re Blaisdell and Shasteen. Our cases indicate "good cause" exists to set aside a dismissal under HRCP Rule 41(b)(2) if there is no (1) deliberate delay and/or contumacious conduct; or (2) if deliberate delay or contumacious conduct exist, there is no actual prejudice that cannot be addressed through lesser sanctions.

Accordingly, by analogy, these factors should also be considered in determining whether "good cause" exists under HRCP Rule 55(c). "Good cause" should exist to set aside an entry of default if: (1) the defendant did not deliberately fail to plead or otherwise defend[26] or engage in contumacious conduct;[27] or

---

[26]    We note that "deliberate delay" has been construed to not include time due to the unavailability of counsel. Shasteen, 79 Hawaiʻi at 108, 899 P.2d at 391 ("[T]wo of the five continuances were as a result of requests made by [the plaintiff] corporation. However, the requests were based on reasons directly related to the unavailability of [the plaintiff] corporation's attorney. Moreover, although [the defendant], in advancing its argument with respect to delay, contends that '[the plaintiff] undertook no genuine effort to find successor counsel [where] [h]aving counsel was critical,' we review this contention as it relates to the second factor, contumacious conduct.") (Sixth and seventh alterations in original.) Thus, the same analysis should apply to deadlines missed due to the unavailability of counsel. As in

(continued. . .)

(b) if the defendant did deliberately fail to plead or otherwise defend or engage in contumacious conduct, there is no actual prejudice to the plaintiff[28] that cannot be addressed through lesser sanctions.[29]

We reiterate, however, that whether "good cause" exists will depend upon the circumstances of the individual case. And as indicated in 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Civ. § 2693 (4th ed. 2019), appellate courts have demonstrated a marked deference to decisions granting relief against default entries.

---

(. . .continued)
Shasteen, any allegation that a defendant caused unavailability of counsel should be evaluated under the "contumacious conduct" prong.

[27]    In In re Blaisdell, this court stated that "[w]ithout evidence that Blaisdell conducted himself in a willfully defiant manner, his actions did not amount to what this court considers 'contumacious conduct.'"  125 Hawaiʻi at 50, 252 P.3d at 69.  This court also noted that Black's Law Dictionary defined "contumacious conduct" as "[w]illfully stubborn and disobedient conduct."  Shasteen, 79 Hawaiʻi at 107 n.7, 899 P.2d at 390 n.7 (alteration in original) (citing Contumacious Conduct, Black's Law Dictionary (6th ed. 1990)).

[28]    "The mere fact that the nondefaulting party will be required to prove his case without the inhibiting effect of the default upon the defaulting party does not constitute prejudice which should prevent a reopening."  BDM, 57 Haw. at 76, 549 P.2d at 1150 (citation omitted).

[29]    A trial court must also state why a lesser sanction is insufficient to serve the interests of justice.  In re Blaisdell, 125 Hawaiʻi at 50-51, 252 P.3d at 69-70.  We have previously stated that a trial court can impose some lesser sanction, such as an award of attorney's fees caused by the default, as a condition for setting aside the entry of default.  See Dela Cruz, 141 Hawaiʻi at 346, 409 P.3d at 750.

## V.   Conclusion

Based on the reasons explained above, we affirm the ICA's May 3, 2019 judgment on appeal, which affirmed the circuit court's July 6, 2016 final judgment.

Mark G. Valencia                 /s/ Sabrina S. McKenna
(Stephanie M. Segovia
with him on the briefs),        /s/ Richard W. Pollack
for petitioner

                                   /s/ Michael D. Wilson

Dennis W. King,
for respondent

